IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**,<br><br>                  Plaintiff,<br><br>    v.<br><br>**(01) LAWRENCE COURTNEY LAWHORN**,<br>a/k/a "Courtney McAllister," "Cooter," "Coot"<br>[DOB: 01/21/1988]<br><br>**(02) TINA BATTIE**<br>a/k/a "Tina Plant"<br>[DOB: 12/16/1985]<br><br>**(03) LATOYA MARIE BROWN**,<br>[DOB: 09/09/1985]<br><br>**(04) LAUREN COURTNEY LUQUE**,<br>a/k/a "Apple"<br>[DOB: 03/10/1986]<br><br>                  Defendants. | No. 22-cr-04013-BCW-01/04<br><br>**COUNT 1**<br>18 U.S.C. § 1349<br>NMT 20 Years Imprisonment<br>NMT $250,000 Fine<br>NMT 3 Years Supervised Release<br>Class C Felony<br><br>**COUNTS 2 through 8**<br>18 U.S.C. § 1343<br>NMT 20 Years Imprisonment<br>NMT $250,000 Fine<br>NMT 3 Years Supervised Release<br>Class C Felony<br><br>**COUNT 9**<br>18 U.S.C. § 1956(h)<br>NMT 20 Years Imprisonment<br>NMT $500,000 Fine or Twice the Amount of the Criminally Derived Property<br>NMT 3 Years Supervised Release<br>Class C Felony<br><br>**FORFEITURE ALLEGATION**<br>18 U.S.C. §§ 981(a)(1)(A) and (C) and 982(a)(1) and (2)(A)<br>28 U.S.C. § 2461(c)<br><br>$100 Special Assessment (Each Count)<br>Mandatory Restitution (Each Count)<br><br>**<u>Defendants/Counts</u>**<br>**(01) L. Lawhorn: 1-9,**<br>**(02) T. Battie: 1-9.**<br>**(03) L. Brown, 1, 3, and 9.**<br>**(04) L. Luque: 1, 4, and 9.** |

# I N D I C T M E N T

**THE GRAND JURY CHARGES THAT:**

## Introduction and Background

At all times relevant to this Indictment:

### The Small Business Administration/The CARES Act/Economic Injury Disaster Loans

1. The United States Small Business Administration ("SBA") was an executive branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

2. As part of this effort, the SBA enabled and provided for loans through banks, credit unions and other lenders. These loans had government-backed guarantees. In addition to traditional SBA funding programs, The CARES Act, which was signed into law in March 2020, established several new temporary programs and provide for the expansion of others to address the COVID-19 pandemic.

3. One of these new programs was the expansion of an existing disaster relief program – the Economic Injury Disaster Loan ("EIDL") – to provide for loan assistance (including $10,000.00 advances) for small businesses. The EIDL proceeds could be used to pay fixed debts, payroll, accounts payable, and other bills associated with the small business that could have been paid had the disaster not occurred; however, such loans proceeds were not intended to replace lost sales or profits or for the expansion of the business.

4.      Unlike other types of SBA-guaranteed loans, EIDL funds were issued directly from the United States Department of Treasury and applicants applied through the SBA via an online portal and application.  Through the online portal, EIDL applicants submitted personal and business information in support of each EIDL application, but were not required to submit any supporting or substantiating documentation with their application.

5.      An EIDL application included a paragraph where the applicant affirmed that the information submitted was true and correct under penalty of law and acknowledged that false information might result in criminal sanctions.  The application process involved filling out data fields relating to the size of the affected business entity, the ownership of the business, the number of employees working for the business, and gross business revenues realized in the 12 months prior to the impact of COVID-19 on the national economy.  The business must have existed in an operational condition on or before February 1, 2020.

6.      The EIDL application information submitted by the applicant was used by the SBA to calculate the amount of money the business was eligible to receive in the form of a loan.  In addition to the loan and EIDL applicant could click on and check a box on the application to request an EIDL Advance of up to $10,000.00 based on the number of employees of the business.  The EIDL Advance did not have to be repaid.

### Cash App (Formally Known as Square Cash)

7.      Cash App (formally Square Cash) was a mobile payment service developed by Block Inc. that allowed users to transfer money ("Cash App").  Cash App allowed users to conduct banking, investments, peer-to-peer money transfers and cryptocurrency transactions.  Account users were limited in the amounts they could send or receive depending on whether the user was

verified. An unverified user account could only send $250/week and receive $1000/month. A verified user account could send $7,500.00/week with no limit on funds that could be received. To verify an account, a user was required to submit the user's legal name, date of birth, and the last four digits of the user's social security number. As for banking, this service allowed users to send, receive, and store money. Users could transfer money out of the Cash App to any local bank account. Cash App charged a 2.75% fee to transfer money to a bank account.

### The Defendants

8. Defendant **LAWRENCE COURTNEY LAWHORN** a/k/a "Courtney McAllister," "Cooter," "Coot" ("**LAWHORN**") was a resident of the Western District of Missouri, who at various times resided in Columbia and the Kansas City, Missouri areas. **LAWHORN** was in romantic relationships with defendants **LAUREN COURTNEY LUQUE** and **LATOYA MARIE BROWN**. **LAWHORN** had a Bank of America bank account, bank account number XXXXXXXX6872, which was opened on June 17, 2020.

9. Defendant **TINA BATTIE** a/k/a "Tina Plant" ("**BATTIE**") was a resident of the Western District of Missouri, who resided in the Columbia, Missouri area. **BATTIE** was the owner of A1 Empire, Inc. A1 Empire, Inc. was incorporated in the State of Missouri as a business services/business management corporation. A1 Empire, Inc. had a Bank of America account, account number XXXXXXXX7881 **(**"A1 Empire Bank of America account"). **BATTIE** was the sole signatory on the A1 Empire Bank of America account. **BATTIE** had a verified Cash App account with the "Identify Verification Name" of "Tina Battie" and the "cashtag" of "a1empire". ("**BATTIE'S** Cash App account"). The A1 Empire Bank of America account was linked to

4

Case 2:22-cr-04013-BCW   Document 1   Filed 02/08/22   Page 4 of 15

**BATTIE'S** Cash App account as a payment source. **BATTIE** also had the ability to transfer funds from **BATTIE'S** Cash App account to an NFCU account ("NFCU account").

10. Defendant **LAUREN COURTNEY LUQUE** ("**LUQUE**") was a resident of the Western District of Missouri, who resided in Fulton, Missouri. **LUQUE**, along with another individual, had a Bank of America account, account number XXXXXXXX2210 (**LUQUES'S** Bank of America account). **LUQUE'S** Bank of America account had a card associated with it, card number XXXXXXXXXXXX5203. **LUQUE** had a verified Cash App account with the "Identify Verification Name" of "Lauren Luque" and the "cashtag" of "applemc". ("**LUQUE'S** Cash App account"). A payment source linked to **LUQUE'S** Cash App account was a Bank of America National Association card brand, card number XXXXXXXXXXXX5890. **LUQUE** had a United Credit Union account, member number 4026604 ("**LUQUE'S** U.C. Union account").

11. Defendant **LATOYA MARIE BROWN** ("**BROWN**") was a resident of the Western District of Missouri, who at various times resided in Columbia and the Kansas City, Missouri areas. **BROWN** has a child in common with **LAWHORN**. **BROWN** had a bank account with BMO Harris Bank, N.A., account number XXXXXX7440 ("**BROWN'S** BMO Harris account"). **BROWN'S** BMO Harris account had a card associated with it, number XXXXXXXXXXXX5890. **BROWN** had a verified Cash App account with the Cash App account with the "Identify Verification Name" of "Latoya Brown" and the "cashtag" of "toyabrockin" ("**BROWN'S** Cash App account"). A payment source linked to **BROWN'S** Cash App Account was a BMO Harris Bank N.A. card brand, card number XXXXXXXXXXXX5890.

5

# COUNT 1
(Conspiracy to Commit Wire Fraud)
18 U.S.C. § 1349

12. Between June 1, 2020, and August 24, 2020, said dates being approximate, in the Western District of Missouri, and elsewhere, the defendants **(01) LAWRENCE COURTNEY LAWHORN** a/k/a "Courtney McAllister," "Cooter," "Coot,", **(02) TINA BATTIE** a/k/a "Tina Plant", **(03) LAUREN COURTNEY LUQUE** a/k/a "Apple", **and (04) LATOYA MARIE BROWN**, and other conspirators known and unknown, knowingly and willfully combined, conspired, confederated, agreed, and had a tacit understanding with each other and others known and unknown, to devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises affecting a financial institution, for which the defendants transmitted and caused to be transmitted by means or wire communications in interstate commerce certain writings, signs, signals, and sounds for the purposes of executing the scheme and artifice to defraud and for obtaining money by means of materially false and fraudulent pretenses, representations, and promises; in violation of Title 18, United States Code, Section 1343.

## Manner and Means

13. The manner and means used by the defendants and unindicted co-conspirators to achieve the objectives of the conspiracy to commit wire fraud included, but were not limited to the following:

   a. The primary purpose of the conspiracy and scheme and artifice was for the defendants to fraudulently obtain pandemic-related financial benefits in the form of SBA-sponsored EIDL loans.

6

b. It was further part of the conspiracy and scheme and artifice that the defendants and others formed fictitious business entities such as "Lawrence Lawhorn," "Latoya Brown," and "Lauren Luque," as well as businesses associated with Unindicted Co-Coconspirator 1, Unindicted Co-Conspirator 2, Unindicted Co-Conspirator 3, and Unindicted Co-Conspirator 4 all of which were used to fraudulently apply for loans under the EIDL program.

c. It was further part of the conspiracy and scheme and artifice that the defendants submitted or a co-conspirator on behalf of the defendants submitted applications for loans under the EIDL program that contained materially false statements, misrepresentations, and omissions related to the claimed business entities.

d. It was further part of the conspiracy and scheme and artifice that the defendants falsely attested, or a co-conspirator falsely attested on behalf of the defendant, that the information was true and accurate.

e. It was further part of the conspiracy and scheme and artifice that the defendants helped conspirators, and unindicted co-conspirators, fraudulently apply for EIDL funds and in some cases were paid a percentage of funds obtained.

f. It was further part of the conspiracy and scheme and artifice that the defendants and co-conspirators, including unindicted co-conspirators, caused actual loss in the amount of $30,000.00 and intended loss of in an amount of not less than $70,000.00.

g. It was further part of the conspiracy and scheme and artifice that the Small Business Association sustained a financial loss.

h. It was part of the conspiracy and scheme and artifice to defraud that the defendants knowingly and willfully transmitted and caused to be transmitted by means of wire communication through interstate commerce, certain signs, signals, and sounds, that is, the electronic transmission of information from terminals, computers, and/or cellular telephones within the Western District of Missouri and terminals and/or computer servers located outside the State of Missouri.

14. All contrary to the provisions of Title 18, United States Code, Section 1343, and all in violation of Title 18, United States Code, Section 1349.

**COUNTS 2 through 4**
(Wire Fraud)
<u>18 U.S.C. § 1343</u>

15. The factual allegations in paragraph 13 of this Indictment are incorporated by reference as if fully set forth to allege a scheme and artifice to obtain money by materially false representations.

16. On or about the dates set forth in each individual count, within the Western District of Missouri and elsewhere, the defendants set forth in each individual count, aiding and abetting each other and others, for the purpose of executing the above-described scheme and artifice to obtain money by materially false representations, knowingly transmitted or caused to be transmitted in interstate commerce by means of wire communications the following signs, signals and sounds, each constituting a separate count of this Indictment, as follows:

| COUNT | DATE | DEFENDANT(S) | INTERSTATE TRANSMISSION |
|---|---|---|---|
| 2 | 6/23/2020 | **(01) LAWRENCE COURTNEY LAWHORN** a/k/a "Courtney McAllister," "Cooter," "Coot," **(02) TINA BATTIE** a/k/a "Tina Plant" | Submission of electronic EIDL application for the business entity "Lawrence Lawhorn" |

| COUNT | DATE | DEFENDANT(S) | INTERSTATE TRANSMISSION |
|---|---|---|---|
| 3 | 6/24/2020 | **(01) LAWRENCE COURTNEY LAWHORN** a/k/a "Courtney McAllister," "Cooter," "Coot," **(02) TINA BATTIE** a/k/a "Tina Plant," **(03) LATOYA MARIE BROWN** | Submission of electronic EIDL application for the business entity "Latoya Brown" |
| 4 | 6/25/2020 | **(01) LAWRENCE COURTNEY LAWHORN** a/k/a "Courtney McAllister," "Cooter," "Coot," **(02) TINA BATTIE** a/k/a "Tina Plant," **(04) LAUREN COURTNEY LUQUE** a/k/a "Apple" | Submission of electronic EIDL application for the business entity "Lauren Luque" |

17. All in violation of Title 18, United States Code, Sections 1343 and 2.

**COUNTS 5 through 8**
(Attempted Wire Fraud)
18 U.S.C. § 1349

18. The factual allegations of paragraph 13 of this Indictment are incorporated by reference as if fully set forth to allege a scheme and artifice to obtain money by materially false representations.

19. On or about the dates set forth in each individual count, within the Western District of Missouri and elsewhere, the defendants set forth in each individual count, aiding and abetting each other and others, for the purpose of executing the above-described scheme and artifice to obtain money by materially false representations, knowingly transmitted or caused to be transmitted in interstate commerce by means of wire communications the following signs, signals and sounds, each constituting a separate count of this Indictment, as follows:

| COUNT | DATE | DEFENDANT(S) | INTERSTATE TRANSMISSION |
|---|---|---|---|
| 5 | 06/23/2020 | **(01) LAWRENCE COURTNEY LAWHORN** a/k/a "Courtney McAllister," "Cooter," "Coot," **(02) TINA BATTIE** a/k/a "Tina Plant" | Submission of electronic EIDL application for the business entity "Michael Stapleton" |

| COUNT | DATE | DEFENDANT(S) | INTERSTATE TRANSMISSION |
|---|---|---|---|
| 6 | 06/24/2020 | **(01) LAWRENCE COURTNEY LAWHORN** a/k/a "Courtney McAllister," "Cooter," "Coot,"<br>**(02) TINA BATTIE** a/k/a "Tina Plant" | Submission of electronic EIDL application for the business entity "Kathy Kimhang" |
| 7 | 06/24/2020 | **(01) LAWRENCE COURTNEY LAWHORN** a/k/a "Courtney McAllister," "Cooter," "Coot,"<br>**(02) TINA BATTIE** a/k/a "Tina Plant" | Submission of electronic EIDL application for the business entity "Tiera Wallace" |
| 8 | 07/01/2020 | **(01) LAWRENCE COURTNEY LAWHORN** a/k/a "Courtney McAllister," "Cooter," "Coot,"<br>**(02) TINA BATTIE** a/k/a "Tina Plant" | Submission of electronic EIDL application for the business entity "Marquez Lawhorn" |

20. All in violation of Title 18, United States Code, Sections 1343, 1349, and 2.

**COUNT 9**
(Conspiracy to Launder Money)
18 U.S.C. §§ 1956(a)(1)(B)(i) and (h)

21. On Between June 1, 2020, and July 31, 2020, said dates being approximate, in the Western District of Missouri, and elsewhere, the defendants, **(01) LAWRENCE COURTNEY LAWHORN** a/k/a "Courtney McAllister," "Cooter," "Coot,", **(02) TINA BATTIE** a/k/a "Tina Plant", **(03) LAUREN COURTNEY LUQUE** a/k/a "Apple", **and (04) LATOYA MARIE BROWN**, knowingly and intentionally combined, conspired and agreed with each other, and others, known and unknown to the Grand Jury, to commit offenses against the United States in violation of Title 18, United States Code, Section 1956, to wit: to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, wire fraud, as charged in Counts 2, 3, and 4 of this Indictment, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of

specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, contrary to the provisions of Title 18, United States Code, Section 1956(a)(1)(B)(i), all in violation of Title 18, United States Code, Section 1956(h).

## Manner and Means

22. The members of the conspiracy used various manners and means to effect the objects and purposes of the conspiracy, including but not limited to the following:

    a. On or about June 25, 2020, $10,000.00 from the United States Treasury was deposited into **BROWN'S** BMO Harris bank account based on the EIDL application submitted for the business "Latoya Brown."

    b. On or about June 25, 2020, $10,000.00 from the United States Treasury was deposited into **LAWHORN'S** Bank of America account based on the EIDL application submitted for the business "Lawrence Lawhorn."

    c. On June 30, 2020, **BROWN** transferred $150.00 from **BROWN'S** BMO Harris bank to **LUQUE'S** Cash App account via **BROWN'S** Cash App account. **BROWN'S** Cash App account for the $150.00 transaction listed the subject as "Courtney." On June 30, 2020, **BROWN** transferred $4,000.00 from **BROWN'S** BMO Harris bank to **BATTIE'S** Cash App account via **BROWN'S** Cash App account.

    d. On or about June 30, 2020, $10,000.00 from the United States Treasury was deposited into **LUQUE'S** Bank of America account based on the EIDL application submitted for the business "Lauren Luque."

e. On June 30, 2020, **BATTIE** transferred $3,500.00 from **BATTIE'S** Cash App account to **LUQUE'S** Cash App account.

f. On June 30, 2020, **LAWHORN** and **BATTIE** renegotiated **BATTIE'S** fees via text message.

g. On July 1, 2020, **BROWN** transferred $2,850.00 from **BROWN'S** BMO Harris bank to **LUQUE'S** Cash App account via **BROWN'S** Cash App account. On July 1, 2020, **BROWN** transferred $1,000.00 from **BROWN'S** BMO Harris bank to **BATTIE'S** Cash App account via **BROWN'S** Cash App account

h. On July 2, 2020, **LUQUE** transferred $6,175.37 from **LUQUE'S** Cash App account to **LUQUE'S** Bank of American Account.

i. On July 2, 2020, **BATTIE** transferred $1,500.00 from **BATTIE'S** Cash App account to A1 Empire Bank of America account.

j. On July 3, 2020, **LUQUE** transferred $2,000.00 from **LUQUE'S** Cash App account to **BATTIE'S** Cash App account.

k. On July 3, 2020, **BATTIE** transferred $2,000.00 from **BATTIE'S** Cash App account to A1 Empire Bank of America account.

l. On July 3, 2020, **LUQUE** transferred $12,151.00 from **LUQUE'S** Bank of America account to **LUQUE'S** U.C. Union account. The $12,151.00 withdraw posted to **LUQUE'S** Bank of America account on July 6, 2020.

m. On July 3, 2020, **LUQUE** withdrew $5,000.00 from **LUQUE'S** U.C. Union account.

  n. On July 6, 2020, **LUQUE** transferred $2,000.00 from **LUQUE'S** Bank of America account to **BATTIE'S** Cash App account via **LUQUE'S** Cash App Account.

  o. On July 7, 2020, **BATTIE** transferred $2,000.00 and $740.00 from **BATTIE'S** Cash App account to A1 Empire Bank of America account.

  p. On July 10, 2020, **LUQUE** withdrew $3,000.00 from **LUQUE'S** U.C. Union account.

  q. On July 13, 2020, **LAWHORN** withdrew $8,150.00 from **LAWHORN'S** Bank of America account.

  r. On July 22, 2020, **BATTIE** conducted a wire transfer of $6,000.00 from A1 Empire Bank of America account to the NFCU account.

23. All in violation of Title 18, United States Code, Section 1956(h).

## FORFEITURE ALLEGATION

24. The factual allegations of this Indictment are re-alleged and incorporated as though fully set forth herein for the purpose of alleging forfeiture to the United States pursuant to the provisions of Title 18, United States Code, Sections 981(a)(1)(A) and (C) and 982(a)(1) and (2)(A), and Title 28, United States Code, Section 2461.

25. As a result of the offenses alleged in this Indictment, and pursuant to Title 18, United States Code, Sections 981(a)(1)(A) and (C) and 982(a)(1) and (2)(A) and Title 28, United States Code, Section 2461, the defendants:

  a. **(01) LAWRENCE COURTNEY LAWHORN** a/k/a "Courtney McAllister," "Cooter," "Coot" in relation to offenses alleged in Counts 1-9;

b. **(02) TINA BATTIE** a/k/a "Tina Plant", in relation to offenses alleged in Counts 1-9;

c. **(04) LAUREN COURTNEY LUQUE** a/k/a "Apple", in relation to offenses alleged in Counts 1, 4 and 9; and

d. **(03) LATOYA MARIE BROWN** in relation to offenses alleged in Counts 1, 3 and 9;

shall forfeit to the United States all property, real and personal, constituting and involved in and derived from any proceeds the defendant obtained directly and indirectly as a result of the violations incorporated by reference in this Allegation.

## Money Judgment

26. A money judgment representing proceeds obtained by the defendants referenced in paragraph 25 of this forfeiture allegation, in that the sum in aggregate constitutes and derived from proceeds traceable to the offenses set forth in the counts related to the defendants referenced in paragraph 25 of this forfeiture allegation and all property involved in and derived from proceeds from the money laundering offense.

## Substitute Assets

27. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred, sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 21, United States Code, Section 853(p) as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of forfeitable property.

**A TRUE BILL.**

*/s/ Casey Castrop*
**FOREPERSON OF THE GRAND JURY**

*/s/ Aaron M. Maness*
**Aaron M. Maness**
Assistant United States Attorney
Missouri Bar No. 63666

Dated: 02/08/2022